# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

KIMBERLY MITCHELL,　　　　　　　)
as Next Friend for C.M., a Minor,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Case No.: _____
vs.　　　　　　　　　　　　　　　　)　　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　　)
IDEA-JUDSON HIGH SCHOOL,　　)
IDEA PUBLIC SCHOOLS, and　　　)
AQAUNETTA THOMPSON In her　)
Individual Capacity　　　　　　　　)

## <u>ORIGINAL COMPLAINT</u>

Plaintiff Kimberly Mitchell, as next friend for her daughter, C.M., a minor, files this complaint against Defendants, IDEA-JUDSON HIGH SCHOOL, IDEA PUBLIC SCHOOLS, and AQAUNETTA THOMPSON, in her individual capacity, and would respectfully show this Honorable Court the following:

### I. <u>PARTIES</u>

1. At all times relevant herein, Plaintiff KIMBERLY MITCHELL is an individual domiciled in Bexar County, Texas, and is the mother and next friend of C.M., a minor child. Because C.M. is a minor, all claims asserted herein are brought through her mother pursuant to applicable Texas law.

2. At all times relevant herein, Defendant, IDEA-JUDSON HIGH SCHOOL ("IDEA-Judson") is an open-enrollment public charter school operating in the State of Texas and is a state actor for purposes of 42 U.S.C. § 1983. IDEA-Judson

may be served with summons by serving its Principal, Adam Schwab, at 13427 Judson Rd., San Antonio, Texas 78233.

3.　At all times relevant herein, Defendant, IDEA PUBLIC SCHOOLS, is a Texas nonprofit organization that operates open-enrollment public charter schools throughout the State of Texas and is a state actor for purposes of 42 U.S.C. § 1983. IDEA Public Schools may be served with summons by serving its Chairman of the Board, Collin Sewell, at 2115 W. Pike Blvd., Weslaco, Texas 78596.

4.　At all times relevant herein, Defendant AQAUNETTA THOMPSON ("Defendant Thompson" or "Thompson") was an individual domiciled in Bexar County, Texas, and was employed as a teacher at IDEA-Judson High School, acting under color of state law for purposes of 42 U.S.C. § 1983. She may be served with summons at 218 Hub Ave., San Antonio, Texas 78220, or at any other location where she may be found.

## II. <u>JURISDICTION AND VENUE</u>

5.　This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court also has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

6.　Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because all Defendants reside in this District for venue purposes, and a substantial part of

the events or omissions giving rise to the claims occurred within the Western District of Texas, San Antonio Division.

## LIMITATIONS AND TOLLING

7.      C.M. was born on May 11, 2007, and was a minor at all times relevant to this lawsuit. Under Texas Civil Practice & Remedies Code § 16.001(a)(1)–(b), a minor is under a "legal disability," and all statutes of limitation are tolled until the disability is removed. In addition, because C.M. has documented disabilities including ADHD and PTSD, she is independently entitled to tolling under § 16.001(a)(2), which provides that limitations are tolled for individuals with qualifying mental impairments.

8.      Texas tolling rules apply to both state-law claims and federal claims brought under 42 U.S.C. § 1983. Accordingly, the statute of limitations for every cause of action asserted herein has not yet begun to run, and all claims in this Complaint are timely as a matter of law.

## III. FACTUAL BACKGROUND

9.      At all times relevant hereto, C.M. was a sixteen-year-old minor child who attended IDEA-Judson High School, an open-enrollment charter school chartered by the State of Texas and located within the geographical boundaries of the San Antonio Independent School District. At all times relevant hereto, Defendant Aqaunetta Thompson was employed as a teacher at IDEA-Judson.

10.      At all times relevant, IDEA-Judson possessed written documentation establishing that C.M. had been diagnosed with ADHD and PTSD, as reflected in her

3

Section 504 Plan dated January 24, 2023. IDEA-Judson had determined that these conditions substantially limited C.M.'s major life activities of learning and concentrating, and required staff to utilize appropriate redirection and de-escalation techniques. Despite this knowledge, Defendant Thompson failed to follow any trauma-informed or disability-appropriate practices during her confrontation with C.M.

11.     On October 4, 2023, C.M. came to school early. Shortly after her arrival, as C.M. was walking past Thompson's office on her way to another teacher's office, Thompson asked to see her "in 5 minutes." When C.M. met with Thompson, the teacher informed C.M. that she needed to talk to her about another student.

12.     That "other student" ("Zoe") was the girlfriend of an eighteen-year-old male student at Judson High with whom C.M. had a sexual encounter that left C.M. infected with a sexually transmitted disease.

13.     Thompson accused C.M. of "bullying" Zoe the day before. C.M. informed Thompson that this could not be true because C.M. was with another student, Mishaun, all day and never saw Zoe that day.

14.     In the process of this conversation, Thompson became agitated and suddenly started accusing C.M. of being sexually promiscuous with Zoe's boyfriend.

15.     Instead of disciplining, investigating, or filing charges against the eighteen-year-old male for engaging in illegal sexual intercourse with a minor, Thompson arbitrarily accused C.M. of "bullying" Zoe.

16. As C.M. attempted to calmly explain to Thompson that she never bullied Zoe, Thompson began to loudly berate C.M., calling her a "slut", a "whore", and a "burn girl" (a derogatory reference to someone who allegedly spreading a sexually transmitted disease) in the presence and within hearing distance of other students and teachers.

17. As the conversation continued, C.M. grew increasingly offended and agitated by Thompson's foul and offensive language and demeanor and attempted to walk away peacefully.

18. Twice during that conversation, Thompson forcefully grabbed C.M.'s wrist to prevent her from walking away.

19. During the third time, C.M. finally did manage to walk away. As she walked down the school's hallway toward her first-period classroom, Thompson followed close behind, continuing to yell insults at C.M. with a loud voice in the presence and within hearing distance of other students and teachers.

20. At a certain point, Thompson ordered C.M. to stop walking away from her. However, C.M. continued on because, at that point, she feared for her physical safety.

21. In her written statement to school administrators investigating the incident, Thompson admitted, "*I walked behind her to ask her to go downstairs,*" which means to the principal's office.

22. In her written statement to administrators, Thompson further admitted that she "grabbed her backpack" when C.M. entered the classroom, acknowledging

that she physically restrained C.M. as part of her attempt to force C.M. to comply with her directive. Thompson also admitted that she "swung with [her] left hand," confirming that she struck C.M. during the encounter.

23.    By telling C.M. to "go downstairs," Thompson gave C.M. an order under Thompson's inherent disciplinary authority as a teacher of Judson High School.

24.    Thompson apparently considered C.M.'s alleged derogatory remarks to the other student to be an infraction of school rules and inter-student etiquette.

25.    Thompson's conversation with C.M. and the events to follow were part and parcel of Thompson's attempt to punish or "discipline" C.M. for that perceived infraction.

26.    Security video from the school's hallway cameras shows that, as C.M. tried to enter her first-period classroom, Defendant Thompson lunged forward, grabbed hold of C.M.'s body by her backpack, and violently and forcefully attempted to yank C.M. back out into the hallway.

27.    IDEA-Judson's Human Resources Investigation Report corroborated the video evidence, concluding that Thompson "initiated and engaged in a physical fight with a student" and that at no point did Thompson attempt to disengage from the altercation. The investigation formally found the allegation of "Inappropriate Physical Contact" to be substantiated.

28.    The security video shows C.M. wriggling herself out of her backpack and then turning and pushing Thompson away from her to protect herself. That's when Thompson struck CM in the face and slammed her against a wall in the hallway.

29. The security video also shows that after Thompson struck CM in the face and slammed her against a wall, that CM, fearing for her physical safety from the much bigger teacher, fought to get away from Thompson. In response, the security video shows that Thompson punched and pushed CM to the ground, out of the view of the camera.

30. According to eyewitnesses, two male students and a male teacher eventually separated the two.

31. Multiple staff witnesses corroborated that Thompson was the physical aggressor. Teacher John Limon reported that Thompson "grabbed both straps" of C.M.'s backpack, "kept pulling it," and backed C.M. into a wall before any physical contact by C.M. occurred. Limon further confirmed that Thompson struck C.M. in the face after C.M. attempted to free herself from Thompson's grasp.

32. School administrators at first tried to suspend C.M. from school for five days even though she was not at fault. After an investigation, however, the principal suspended Thompson and then fired the teacher for improperly initiating physical contact with C.M.

33. Despite the video evidence and witness statements showing that Thompson was the aggressor, IDEA-Judson initially suspended C.M. for five days and refused to show her mother the full video of the incident, providing only a short, misleading snippet. Administrators later admitted that Thompson was placed on paid administrative leave and ultimately removed from the campus following the HR investigation.

34.    All actions of Defendant Thompson complained of herein were committed by Thompson in her misguided attempt to "discipline" C.M.

35.    As a direct and proximate cause of the aforementioned offensive, unconstitutional, and unacceptable behavior, C.M. sustained severe injuries including emotional and psychiatric injuries and the physical symptoms related thereto, and other economic and non-economic damages not fully known at this time.

## IV. CAUSES OF ACTION

### Count I. Violation of 42 U.S.C. § 1983 – Due Process
*(Against Defendant Thompson)*

36.    Plaintiff re-incorporates the foregoing paragraphs by reference as if set out fully herein.

37.    At all times relevant, Defendant Aqaunetta Thompson was employed as a certified teacher at IDEA-Judson High School, an open-enrollment public charter school operated by IDEA Public Schools.

38.    The incident giving rise to this litigation occurred while Thompson was acting within the course and scope of her employment as a classroom teacher, exercising disciplinary authority over C.M. As such, Thompson acted under color of state law at all times relevant to this action.

39.    The Fourteenth Amendment prohibits public-school employees from subjecting students to arbitrary, capricious, or excessive discipline, including the use of unreasonable, excessive, or malicious physical force, without due process of law.

40.    While acting in her official capacity as a public-school teacher, Thompson violated C.M.'s clearly established Fourteenth Amendment rights by

initiating physical force, grabbing C.M.'s body and backpack, striking C.M. in the face, slamming her against a wall, and continuing to engage in physical violence even after C.M. attempted to retreat. Thompson's conduct was malicious, punitive, and wholly unrelated to any legitimate pedagogical or disciplinary purpose.

41.    Thompson's actions constituted arbitrary and conscience-shocking conduct that no reasonable educator could believe to be lawful, and which the Fifth Circuit has recognized as actionable under § 1983 when a teacher uses excessive physical force against a student. See *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987).

42.    Numerous federal courts, including the Fifth Circuit, have held that a public-school employee violates a student's substantive due process rights when the employee uses force that is "grossly disproportionate," "malicious," or "inspired by ill-will," and not for any legitimate pedagogical purpose. Thompson's conduct, including verbal degradation, physical restraint, striking C.M. in the face, and slamming her into a wall, falls squarely within the category of force that federal courts have repeatedly deemed unconstitutional.

43.    The Fifth Circuit has further held that a public-school employee violates a student's substantive due process rights when the employee engages in corporal punishment or physical force that is "arbitrary, capricious, or malicious," even when nominally connected to discipline. *Fee v. Herndon*, 900 F.2d 804, 808–09 (5th Cir. 1990). Thompson's conduct, physically restraining C.M., striking her in the face, slamming her into a wall, and escalating the encounter despite C.M.'s attempts to

9

retreat, was far more egregious than the conduct found unconstitutional in *Fee*, and was wholly unrelated to any legitimate disciplinary purpose.

44. Thompson's conduct was especially egregious given IDEA-Judson's documented knowledge that C.M. had ADHD and PTSD, conditions requiring trauma-informed redirection and de-escalation techniques. Thompson ignored these known disabilities and escalated the confrontation through verbal abuse, physical restraint, and violence.

45. Thompson's conduct was malicious, oppressive, and in reckless disregard of C.M.'s constitutional rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1983.

46. As a direct and proximate result of Thompson's unconstitutional actions, C.M. suffered physical injuries, emotional and psychological trauma, aggravation of her PTSD, humiliation, and other damages to be proven at trial.

## Count II. Violation of 42 U.S.C. § 1983 – Failure to Train/Supervise
### *(Against Defendant IDEA-Judson)*

47. Plaintiff incorporates the foregoing paragraphs by reference as if set forth fully herein.

48. IDEA-Judson High School is an open-enrollment public charter school chartered by the Texas Board of Education and operating within the territorial jurisdiction of the San Antonio Independent School District. As such, IDEA-Judson is a local governmental unit and a state actor for purposes of 42 U.S.C. § 1983.

49. At all times relevant, IDEA-Judson had a constitutional duty to adequately train, supervise, and monitor its student-facing employees, including

Defendant Thompson, in lawful student discipline, trauma-informed practices, redirection, and de-escalation techniques, so as to prevent violations of students' substantive and procedural due process rights under the Fourteenth Amendment.

50.    IDEA-Judson possessed written documentation establishing that C.M. had been diagnosed with ADHD and PTSD, as reflected in her Section 504 Plan dated January 24, 2023. IDEA-Judson had determined that these conditions substantially limited C.M.'s major life activities of learning and concentrating and required staff to utilize appropriate redirection and de-escalation techniques. Despite this knowledge, IDEA-Judson failed to train or supervise Thompson in disability-appropriate, trauma-informed disciplinary practices.

51.    IDEA-Judson utterly failed to implement adequate policies or provide proper training and supervision to its teachers regarding (a) lawful student discipline, (b) the constitutional limits on the use of physical force, (c) de-escalation techniques, and (d) the handling of students with known disabilities such as ADHD and PTSD.

52.    The need for additional training and supervision was obvious, as evidenced by a January 2024 Change.org petition initiated by IDEA-Judson students, which sought to bring attention to teachers' repeated use of bullying, intimidation, and improper disciplinary practices without appropriate administrative consequences. The petition reflected widespread student concern about teacher misconduct and IDEA-Judson's failure to supervise or discipline its staff.

53.     IDEA-Judson's failure to act on these warnings reflects a pattern of disregarding student safety concerns. The petition was not an isolated complaint but part of a broader, ongoing pattern of student reports describing teacher misconduct, bullying, and inappropriate disciplinary practices. IDEA-Judson's continued inaction in the face of these repeated warnings demonstrates deliberate indifference to the known risk that teachers, including Thompson, would engage in unconstitutional conduct toward students.

54.     IDEA-Judson was at all relevant times aware of, and deliberately indifferent to, the substantial risk of harm to its students, including C.M., if it failed to implement adequate training, supervision, and policies governing teacher conduct, student discipline, and the use of physical force.

55.     IDEA-Judson's deliberate indifference is further demonstrated by its own Human Resources Investigation Report, which concluded that Thompson "initiated and engaged in a physical fight with a student" and that the allegation of "Inappropriate Physical Contact" was substantiated. The investigation confirmed that Thompson never attempted to disengage and escalated the confrontation through physical aggression.

56.     IDEA-Judson's failure to train and supervise its staff was a moving force behind the constitutional violations inflicted upon C.M. Thompson's assaultive conduct was a predictable and plainly foreseeable consequence of IDEA-Judson's systemic failure to train teachers in lawful discipline, de-escalation, and disability-appropriate practices.

57.    As a direct and proximate result of IDEA-Judson's deliberate indifference and failure to train and supervise its teachers, C.M. suffered violations of her Fourteenth Amendment rights, physical injuries, emotional trauma, aggravation of her PTSD, humiliation, and other damages to be proven at trial.

### Count III. Violation of 42 U.S.C. § 1983 – Failure to Train/Supervise
### *(Against Defendant IDEA Public Schools)*

58.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth fully herein.

59.    Defendant IDEA Public Schools is the governing organization that operates open-enrollment public charter schools throughout Texas, including IDEA-Judson High School. IDEA Public Schools exercises final policymaking authority over IDEA-Judson with respect to teacher training, supervision, disciplinary policies, and student-safety protocols. As such, IDEA Public Schools is a local governmental unit and a state actor for purposes of 42 U.S.C. § 1983.

60.    IDEA Public Schools had a constitutional duty to implement and enforce policies adequate to train and supervise its student-facing employees—including teachers such as Thompson—in lawful student discipline, trauma-informed practices, redirection, and de-escalation techniques, so as to prevent violations of students' substantive and procedural due process rights under the Fourteenth Amendment.

61.    IDEA Public Schools possessed written documentation establishing that C.M. had diagnosed ADHD and PTSD, as reflected in her Section 504 Plan dated January 24, 2023. IDEA Public Schools knew that these conditions substantially limited C.M.'s major life activities of learning and concentrating and required staff to

utilize appropriate redirection and de-escalation techniques. Despite this knowledge, IDEA Public Schools failed to ensure that its teachers, including Thompson, were trained in disability-appropriate, trauma-informed disciplinary practices.

62.    IDEA Public Schools failed to implement adequate policies or provide proper training and supervision to its teachers regarding (a) lawful student discipline, (b) constitutional limits on the use of physical force, (c) de-escalation techniques, and (d) the handling of students with known disabilities such as ADHD and PTSD. This failure constituted a systemic deficiency, not an isolated oversight.

63.    The need for additional training and supervision was obvious, as evidenced by a January 2024 Change.org petition initiated by IDEA-Judson students, which sought to bring attention to teachers' repeated use of bullying, intimidation, and improper disciplinary practices without appropriate administrative consequences. The petition reflected widespread student concern about teacher misconduct and IDEA Public Schools' failure to supervise or discipline its staff.

64.    IDEA Public Schools, as the final policymaker for all IDEA campuses, had actual and constructive notice of these systemic deficiencies through internal audits, campus-level reports, and prior complaints involving inadequate teacher supervision and improper disciplinary practices. Despite this notice, IDEA Public Schools failed to revise its training programs, update its disciplinary policies, or implement corrective oversight measures, thereby allowing the unconstitutional practices to persist.

65.    IDEA Public Schools was at all relevant times aware of the substantial risk of harm to its students, including minor child C.M., if it failed to implement adequate training, supervision, and policies governing teacher conduct, student discipline, and the use of physical force. Despite this knowledge, IDEA Public Schools consciously chose to maintain its inadequate training and supervision practices.

66.    IDEA Public Schools' deliberate indifference is further demonstrated by its own Human Resources Investigation Report, which concluded that Thompson "initiated and engaged in a physical fight with a student" and that the allegation of "Inappropriate Physical Contact" was substantiated. The investigation confirmed that Thompson never attempted to disengage and escalated the confrontation through physical aggression, conduct that proper training and supervision would have prevented.

67.    IDEA Public Schools' failure to train and supervise its teachers was a moving force behind the constitutional violations inflicted upon C.M. Thompson's assaultive conduct was a predictable and plainly foreseeable consequence of IDEA Public Schools' systemic failure to train teachers in lawful discipline, de-escalation, and disability-appropriate practices.

68.    As a direct and proximate result of IDEA Public Schools' deliberate indifference and failure to train and supervise its teachers, C.M. suffered violations of her Fourteenth Amendment rights, physical injuries, emotional trauma, aggravation of her PTSD, humiliation, and other damages to be proven at trial.

### Count IV. Assault and Battery
*(Against Defendant Thompson)*

69.     Plaintiff reincorporates the foregoing paragraphs by reference as if set out fully herein.

70.     Defendant Thompson intentionally and knowingly initiated harmful and offensive physical contact with C.M. when she (a) grabbed C.M.'s wrist, (b) seized and pulled C.M.'s backpack and body, (c) struck C.M. in the face, and (d) slammed C.M. against a hallway wall, as confirmed by witness statements, video evidence, and IDEA-Judson's Human Resources Investigation Report.

71.     Thompson's conduct was neither accidental nor justified; it was deliberate, punitive, and wholly unrelated to any legitimate educational or disciplinary purpose.

72.     As a direct and proximate result of Thompson's assault and battery, C.M. suffered physical injuries, including a red mark to the right side of her face and a red line along the back of her neck as documented by the school nurse, as well as pain, emotional trauma, and other damages to be proven at trial.

### COUNT V. Negligent Hiring, Retention, and Supervision
*(Against Defendants IDEA-Judson and IDEA Public Schools)*

73.     Plaintiff reincorporates the foregoing paragraphs by reference as if fully set forth herein.

74.     Defendants IDEA-Judson and IDEA Public Schools owed a duty to exercise reasonable care in the hiring, retention, supervision, and monitoring of their teachers and student-facing employees, including Defendant Thompson, to ensure

that students were not exposed to unreasonable risks of harm, including physical assault, verbal abuse, and emotional trauma.

75. IDEA-Judson and IDEA Public Schools breached this duty by hiring and retaining Thompson despite her unfitness to safely supervise and interact with students, and by failing to adequately supervise, monitor, or evaluate her conduct in the school environment.

76. IDEA-Judson and IDEA Public Schools possessed written documentation establishing that C.M. had diagnosed ADHD and PTSD, as reflected in her Section 504 Plan dated January 24, 2023. These conditions required trauma-informed redirection and de-escalation techniques. Despite this knowledge, Defendants failed to ensure that Thompson was trained or supervised in disability-appropriate practices.

77. The need for heightened supervision and training of teachers was obvious, as evidenced by a January 2024 Change.org petition initiated by IDEA-Judson students, which reported repeated incidents of teacher bullying, intimidation, and improper disciplinary practices without appropriate administrative consequences. This petition placed Defendants on notice of systemic supervisory failures.

78. IDEA-Judson's own Human Resources Investigation Report confirmed that Thompson "initiated and engaged in a physical fight with a student" and that the allegation of "Inappropriate Physical Contact" was substantiated. The investigation further confirmed that Thompson never attempted to disengage and

17

escalated the confrontation through physical aggression, conduct that proper supervision and training would have prevented.

79.    Defendants further breached their duties by failing to intervene, discipline, retrain, or remove Thompson prior to the incident, and by failing to implement adequate policies or oversight mechanisms to prevent foreseeable harm to students, including C.M.

80.    Reasonable and adequate supervision would have revealed Thompson's escalating pattern of inappropriate interactions with students, her inability to de-escalate conflict, and her lack of training in trauma-informed practices required for students with disabilities such as C.M. Defendants' failure to identify and correct these deficiencies, despite clear opportunities to do so, directly enabled Thompson's assaultive conduct and the resulting harm to C.M.

81.    Defendants' negligent hiring, retention, and supervision of Thompson created an environment in which Thompson was permitted to verbally abuse, physically assault, and emotionally traumatize C.M. without appropriate oversight, intervention, or corrective action.

82.    As a direct and proximate result of Defendants' negligence, C.M. suffered physical injuries, emotional trauma, humiliation, aggravation of her PTSD, and other damages to be proven at trial.

### Count VI. Intentional Infliction of Emotional Distress
*(Against Defendant Thompson)*

83.    Plaintiff reincorporates the foregoing paragraphs by reference as if set out fully herein.

18

84.     Defendant Thompson engaged in extreme and outrageous conduct by verbally attacking C.M. with sexually derogatory slurs, including calling her a "whore," a "slut," and a "burn girl", in the presence of other students and teachers, and by escalating the encounter into a violent physical assault.

85.     Thompson's use of the term "burn girl," a slang reference to sexually transmitted disease stigma, was specifically calculated to inflict maximum humiliation and emotional harm upon C.M., a minor child with known trauma-related vulnerabilities documented in her Section 504 Plan, including ADHD and PTSD.

86.     Thompson's conduct was intentional or, at minimum, carried out with reckless disregard for the near certainty that it would cause C.M. severe emotional distress. Thompson acted with malice, ill-will, and conscious disregard for C.M.'s emotional well-being.

87.     As a direct and proximate result of Thompson's extreme and outrageous conduct, C.M. suffered severe emotional distress, including humiliation, fear, anxiety, psychological trauma, and aggravation of her PTSD. These injuries continue to affect her daily functioning and will likely persist far into the future, for which Plaintiff seeks all damages available under Texas law, including exemplary damages.

## DAMAGES

88.     Plaintiff seeks all damages available under federal and Texas law, including physical pain, emotional distress, mental anguish, humiliation, medical

expenses, future medical care, loss of educational opportunities, and all other compensatory, punitive, and exemplary damages permitted by law.

## PRAYER

89.     **WHEREFORE,** Plaintiff KIMBERLY MITCHELL as next friend of C.M., a minor child, respectfully asks that this Honorable Court summon Defendants AQAUNETTA THOMPSON, IDEA-JUDSON HIGH SCHOOL, and IDEA PUBLIC SCHOOLS to appear and answer herein and that this Honorable Court, upon final trial, render judgment against Defendants and award Plaintiffs compensatory damages against Defendants IDEA-JUDSON HIGH SCHOOL and IDEA PUBLIC SCHOOLS in an amount to be proved at trial, and that the Court award Plaintiffs compensatory and punitive damages against Defendant AQAUNETTA THOMPSON in an amount to be proved at trial, including attorney's fees pursuant to 42 U.S.C. § 1988, costs of court, and pre and post-judgment interest and such other relief, at law and in equity, to which Plaintiffs are justly entitled.

## JURY DEMAND

90.     Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

91.     Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a

20

nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esquire
Florida Bar No. 0596388
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 602.960.9400
Fax: 707.215.3600
Cell: 575.517.6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*

21